UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

KATHY R. THOMAS,                    )
                                    )
        *Plaintiff*,                )
                                    )
v.                                  )        No. 1:18-cv-00065-SKL
                                    )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
        *Defendant*.                )

## MEMORANDUM AND ORDER

Plaintiff Kathy R. Thomas ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Docs. 12 & 16] and filed supporting briefs [Docs. 13 & 17]. This matter is now ripe. For the reasons stated below: (1) Plaintiff's motion for judgment on the administrative record [Doc. 12] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 16] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.     ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 7 ("Tr.")], Plaintiff filed her application for DIB and SSI on May 28, 2015, alleging disability beginning September 2, 2014. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on February 6, 2017. On May 19, 2017, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date through the date through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born on September 1, 1959, which means she was 55 years old on the alleged onset date. This is considered "advanced age" under the pertinent Social Security Administration ("SSA") regulation. 20 C.F.R. § 404.1563. She has a high school diploma and a nursing assistant certification, and is able to communicate in English. She has past relevant work as a sales attendant at Walmart and as a certified nursing assistant.

### B.    Medical Records

In her Disability Report, Plaintiff alleged disability due to depression, poor circulation, anxiety, muscle and nerve damage, "back and neck injury," high blood pressure, high cholesterol, and arthritis (Tr. 211). While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C.    Hearing Testimony

At the hearing before the ALJ on February 6, 2017, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel. The Court has carefully reviewed the transcript of the testimony from the hearing (Tr. 36-56).

## III.   ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The SSA determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1)  If the claimant is doing substantial gainful activity, the claimant is not disabled.

2)  If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3)  If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4)  If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5)  If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is

capable of performing.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.     The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through March 31, 2020.  At step one of the five-step process, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date.  At step two, the ALJ found Plaintiff had two severe impairments: degenerative joint disease of the cervical spine and affective disorder.  The ALJ found Plaintiff had mild arthritis in her left knee, hypertension, and hypercholesterolemia, but that these impairments were not severe.  The ALJ also noted Plaintiff had been diagnosed with back pain and right shoulder pain, but found these conditions were not medically determinable impairments.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium-level exertional work, as defined in 20 C.F.R. § 404.1567(c) and 416.967(c).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a nursing assistant and as a sales attendant.  The ALJ noted Plaintiff had performed both jobs at the very heavy exertional level, but found the nursing assistant job was generally performed at the medium exertional level and the sales attendant job at the light level, according to the Dictionary of Occupational Titles ("DOT").  The ALJ further noted the nursing assistant job is considered semi-skilled (the sales attendant is considered unskilled), but found Plaintiff remained capable of performing it despite her severe mental impairment.

4

# IV. ANALYSIS

Plaintiff asserts the ALJ committed "reversible errors of law," and this matter should be reversed and remanded under sentence four for an award of benefits. She argues the ALJ should have awarded benefits because (1) she meets the requirements of Listings 12.04 and 12.06 of the SSA Listing of Impairments; (2) she is limited to light work rather than medium work, and therefore would qualify as disabled under Rule 202.06 of the SSA Medical-Vocational Rules ("Grid Rules") due to her age, education, and work history; and finally, (3) she is "disabled as a result of substantial proof of severe medically determinable physical and mental impairments and disabling symptoms thereof." [Doc. 13 at Page ID # 468]. Plaintiff also briefly argues, in the alternative, that this matter should be remanded pursuant to sentence six in light of a recent opinion from her treating psychiatrist, which was not available at the time of the ALJ's decision [*id.* at Page ID # 480]. The Court will address the sentence-six argument first, followed by the arguments related to sentence four.

## A. Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the

Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.      Sentence-six remand

Plaintiff's treating psychiatrist, Stephen Spalding, M.D., completed two questionnaires concerning Plaintiff's mental health on June 2, 2017, about two weeks after the ALJ rendered his decision (Tr. 12-15). Both are check-the-box type forms. The first one relates to Listing 12.04, which covers depressive, bipolar, and related disorders. The second one relates to Listing 12.06, which covers anxiety and obsessive-compulsive disorders. Dr. Spalding checked boxes on both forms indicating he believes Plaintiff has an "extreme limitation," in her ability to interact with others, and in her ability to concentrate, persist, or maintain pace. He also checked a box on both forms indicating he believes Plaintiff's mental health disorder is "serious and persistent." Plaintiff

argues she is entitled to a sentence-six remand for further consideration of her claim in light of this evidence.

The Court "cannot reverse the ALJ's decision based on evidence not submitted to the ALJ . . . ." *Sutton v. Soc. Sec. Admin.*, No. 09-2288, 2011 WL 9482974, at *3 (6th Cir. Apr. 5, 2011) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)); *see also Curler v. Comm'r of Soc. Sec.*, 561 F.App'x 464, 472-73 (6th Cir. 2014) ("We have repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g).") (citing *Foster*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). The Court can, however, remand a case for further consideration of a claim in light of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). Such remand "is appropriate 'only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see also* 42 U.S.C. § 405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

"'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding . . . .'" *Schmiedebusch*, 536 F. App'x at 647 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material if it creates "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if

presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). "'Good cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster*, 279 F.3d at 357). "The claimant bears the burden of showing that all three requirements have been met in order to obtain a remand." *Sutton*, 2011 WL 9482974, at *3 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)).

Technically the June 2017 questionnaires are "new" in the sense that they did not physically exist when the ALJ rendered his decision. Nevertheless, Plaintiff does not argue they are based on any new diagnoses, treatment, or evidence of a change in her condition at all. Rather, Plaintiff suggests she solicited the new questionnaires from Dr. Spalding because the SSA had recently revised its criteria for evaluating mental disorders, including Listings 12.04 and 12.06. The problem with this argument is that the new criteria were effective January 17, 2017, which was a few weeks before the administrative hearing, and approximately five months before the ALJ issued his decision. *See Revised Criteria for Evaluating Mental Disorders*, 81 F.R. 66138-01, 2016 WL 5341732 (Sept. 26, 2016). The SSA's intent to make the new rules effective was made clear four months earlier, on September 26, 2016. *Id.* Plaintiff does not offer any explanation as to why she failed to acquire and submit these questionnaires sooner so they could be considered by the ALJ. She also does not address why these questionnaires create a reasonable possibility that her claim would be decided differently if were presented to the ALJ for consideration. As the Commissioner argues, the June 2017 questionnaire suffers from the same deficiencies the ALJ cited as reasons for assigning an earlier opinion from Dr. Spalding little weight. Moreover, the Appeals Council reviewed the questionnaires and found they did "not show a reasonable

9

probability that [they] would change the outcome of the decision." (Tr. 2). *See Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 431 (6th Cir. 2015) (When the Appeals Council reviews evidence submitted after the ALJ's decision, and denies claimant's petition for review, "there is no reason to think that remanding this matter for further administrative proceedings would result in a different outcome."). Accordingly, Plaintiff has failed to meet her burden to be entitled to a sentence-six remand. Plaintiff's motion will be **DENIED** in this regard.

### C.     The ALJ did not Err in Finding Plaintiff did not Meet Listings 12.04 and 12.06.

"The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1525(a)). "In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Id.*

Plaintiff argues the ALJ should have found her mental health impairment meets or medically equals each of the requirements for Listing 12.04, which covers depressive, bipolar, and related disorders, and Listing 12.06, which covers anxiety and obsessive-compulsive disorders. In support of her argument, Plaintiff relies only on Dr. Spalding's opinions as her treating psychiatrist. As discussed above, Dr. Spalding's June 2017 opinion was not before the ALJ, and therefore the Court will not consider it in connection with Plaintiff's remaining arguments. Dr. Spalding also completed two questionnaires on August 31, 2016, one for Listing 12.04 and one

for Listing 12.06.[1]  Accordingly, the issue regarding the listings is whether the ALJ properly considered Dr. Spalding's August 2016 opinion as Plaintiff's treating physician.

In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)).  A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[2]  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); 20 C.F.R. § 404.1527. While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir.

---

[1] He also completed a third questionnaire pertaining to somatoform disorders, indicating Plaintiff does not have such a disorder (Tr. 297).

[2] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017).  The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule.  As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies.  *See* 20 C.F.R. §§ 404.1527; 416.927.  The current versions of 20 C.F.R. § 404.1527 and § 416.927 differ from the version in effect at the time of the ALJ's determination; however, the differences are not substantive and do not impact this memorandum and order.  The Court cites to the current version herein.

1993)); *see also Gayheart*, 710 F.3d at 376 (noting that "two conditions" must be met for treating physician to automatically receive controlling weight (citing 20 C.F.R. § 404.1527(c)(2))).

When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr*, 616 F. App's at 211 (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citation omitted). If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature and length of the treatment relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ is not, however, required to engage in a protracted discussion of the reasons. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement. (citations omitted)).

Dr. Spalding's answers in the questionnaire essentially reflect his belief that Plaintiff meets the requirements for Listings 12.04 and 12.06 (as those requirements existed at the time). For example, he checked boxes indicating Plaintiff has "marked" or "extreme" restrictions in several mental functioning categories, including interacting with the public, responding to work pressures, maintaining concentration, persistence, and pace; and understanding, remembering, and carrying out detailed instructions (Tr. 294-95). He also checked a box indicating Plaintiff was completely unable to function independently outside of her home (Tr. 296). The ALJ gave Dr. Spalding's

August 2016 opinion "little weight." He addressed Dr. Spalding's opinion in his discussion of the

listings as follows:

> Dr. Spalding submitted a medical source statement dated August 31, 2016 where his findings indicated that the claimant exhibited multiple symptoms and met the Listing requirements for affective and anxiety disorders. However, the medical source statement is merely a check-off form and does not include objective findings or analysis to support these conclusions. Further, treatment notes from Dr. Spalding and Keith Nilsen, LPC-MHSP at Mental Health Cooperative are inconsistent with Dr. Spalding's opinion. More specifically, treatment notes reveal that the claimant consistently reported feeling better and stable after taking Saphris, and she was able to work at Salvation Army 20 hours a week and live on her own. The claimant also told her psychological consultative examiner that her problems were primarily physical. As such, Dr. Spalding's own treatment notes and the claimant's self-reports are inconsistent with his assertion that the claimant met these Listings, and are thus given little weight.

> Finally, the undersigned notes that no State agency psychological consultant concluded that a mental listing is medically equaled.

(Tr. 25 (citations to Tr. omitted)). In discussing Plaintiff's RFC, the ALJ reiterated his conclusions

about Dr. Spalding's August 2016 opinion:

> Dr. Stephen Spalding's opinion noted above in Finding 4 was given little weight since treatment notes and the claimant's self-reports were inconsistent with his assertion that the claimant met Listings 12.04 and 12.06. The claimant reported feeling much better and thought her medication was helpful, had been working at Salvation Army, and was emotionally stable after obtaining housing which is not consistent with meeting the Listings. In addition, Dr. Spalding's opinion that the claimant had moderate or marked limitations in understanding, remembering, and carrying out instructions, responding to supervision and others in a work setting are also not supported by the claimant's reports at her consultative examination, or other evidence in the record so this opinion was given little weight. On consultative examination, the claimant was able to understand and respond appropriately to the examiner's questions, she also had a job at Salvation Army working 20 hours a

week for her housing assistance, and stated her problems were primarily physical.

(Tr. 29-30 (citations to Tr. omitted)).

Plaintiff argues Dr. Spalding's August 2016 opinion should have been given controlling weight. She does not take issue with any particular aspect of the ALJ's discussion, but simply contends the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [is] not inconsistent with the other substantial evidence in the case record." [Doc. 13 at Page ID # 475].

After careful consideration, the Court concludes Plaintiff has failed to show error with the ALJ's treatment of Dr. Spalding's August 2016 opinion. The ALJ adequately explained what evidence in the record he found to be inconsistent with the opinion, including the findings of the consultative examiner, Plaintiff's statements, Dr. Spalding's own treatment notes, Plaintiff's therapist's notes (who, like Dr. Spalding, works for the Mental Health Cooperative), and the opinions of the state agency non-examining psychological consultants. Indeed, the ALJ discussed Plaintiff's treatment notes from the Mental Health Cooperative in a fair amount of detail (Tr. 27-28). The Commissioner also recites much of this evidence in their brief, noting several times when Plaintiff presented as alert and oriented, with her attention and concentration grossly intact (Tr. 393, 383, 380, 402, 397), whereas Dr. Spalding opined she had "marked" limitations in her ability to maintain concentration, persistence, and pace (Tr. 296). The Commissioner also points out, as the ALJ did, that Plaintiff responded well to medication (Tr. 383, 380, 416). Again, Plaintiff does not point to any specific evidence she believes the ALJ mischaracterized or overlooked when considering Dr. Spalding's opinion, and after reviewing the records, the Court finds there is none.

The ALJ also discounted the opinion because it is "merely a check-off form," that does not "include objective findings or analysis . . . ." (Tr. 25). This is also a "good reason" for declining to assign significant weight to Dr. Spalding's opinion. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App's 563, 566 (6th Cir. 2016) (holding "judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings" (citations omitted)).

The ALJ sufficiently explained his decision not to assign controlling weight to Dr. Spalding's opinion, and the reasons he gave for discounting it are supported by substantial evidence. Plaintiff does not cite to any other proof showing she meets or medically equals every requirements of Listings 12.04 and 12.06. As the ALJ found, the state agency psychological consultants did not find Plaintiff met any mental impairment listing, and the psychological consultative examiner found no more than mild limitations in Plaintiff's ability to function mentally (Tr. 63, 69, 84, 91-92, 341). Accordingly, the Court concludes there is substantial evidence in the record to support the ALJ's determination that Plaintiff failed to show she has a listing-level mental impairment. Plaintiff's motion will be **DENIED** in this regard.

In conjunction with her listings argument, Plaintiff very briefly argues, "considering that ample evidence was presented to indicate that two listing[s] may be met, the ALJ committed error by failing to adequately develop the administrative record." [Doc. 13 at Page ID # 472-73, 476]. Although an ALJ "has a basic obligation to develop a full and fair record," the ALJ "is not required to act as the claimant's counsel or produce evidence for the claimant." *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-CV-109, 2013 WL 4014715, at *13 (E.D. Tenn. Aug. 6, 2013) *(citing Born v. Sec'y of Health & Human Servs.,* 923 F.2d 1168, 1172 (6th Cir.1990); *Duncan v. Sec'y of Health &*

*Human Servs.,* 801 F.2d 847, 856 (6th Cir.1986)). "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Brooks v. Astrue*, No. 3:09-CV-432, 2011 WL 652839, at *8 (E.D. Tenn. Jan. 26, 2011) (quoting *Foster*, 279 F.3d at 355 (internal quotation marks omitted)), report and recommendation adopted, No. 3:09-CV-432, 2011 WL 652837 (E.D. Tenn. Feb. 14, 2011). Further, because here Plaintiff was represented by counsel at the administrative level, "[t]he ALJ was entitled to assume that Plaintiff . . . was presenting her best evidence in favor of benefits." *Birdwell v. Barnhart*, No. 2:06-0063, 2008 WL 2414828, at *10 (M.D. Tenn. June 12, 2008) (citing *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 549 (6th Cir.2002); *Glen v. Sec'y of Health & Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)).

Plaintiff implies the ALJ should have followed up with Dr. Spalding about whether Plaintiff meets Listings 12.04 and 12.06. But Dr. Spalding's opinion on whether Plaintiff meets the listings is obvious from the questionnaires. Moreover, the SSA *did* retain a consultative examiner to help determine whether Plaintiff is disabled. As mentioned above, the consultative examiner found Plaintiff had no more than mild mental limitations, and emphasized that Plaintiff reported "her problems are primarily physical in nature." (Tr. 340-41). Plaintiff's dissatisfaction with the results of one consultative exam are not grounds for finding the ALJ erred by not ordering a second one. To the extent Plaintiff seeks remand due to the ALJ's decision not to follow up with Dr. Spalding or order an additional consultative exam, Plaintiff's motion will be **DENIED**.

### D. The Grid Rules Do Not Apply at Step Four.

The Grid Rules can direct a finding of disabled or not disabled based on a person's exertional RFC (sedentary, light, medium, etc.) and other vocational factors (age, education, and

past work experience).  They "are utilized by the Secretary during the final step of the disability decision."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 (6th Cir. 2001) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).  "*After* the [Commissioner] determines that the plaintiff is incapable of performing past relevant work, these grids are used to determine whether plaintiff can perform other jobs in the national economy."  *Id.* (emphasis added); *see also* 20 C.F.R. § 404.1520(g) ("If we find that you cannot do your past relevant work . . . , we will consider [your RFC] together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work.").  This makes sense because different considerations are at play when determining whether a person can adjust to a *new* occupation as compared to whether a person can do work they have performed in the past.

Plaintiff argues Grid Rule 202.06 directs a finding of disability, but in this case, the ALJ determined Plaintiff was capable of performing her past relevant work as a nursing assistant and as a sales attendant.  Accordingly, as the Commissioner argues and the above-quoted authorities plainly indicate, the Grid Rules do not apply.

In conjunction with her Grid Rules argument, Plaintiff argues the ALJ erred by not assigning her a light work RFC.  As the Commissioner argues, however, even a light work RFC would not help Plaintiff get past step four. To get to the Grid Rules at step five, Plaintiff was required to show not only that she is unable to perform the actual duties required by her specific former job, but also that she is unable to perform the "functional demands and job duties of the occupation as generally required by employers throughout the national economy."  SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982); *see also Hansard v. Berryhill*, No. 3:15-CV-439-HBG, 2017 WL 1194224, at *3 (E.D. Tenn. Mar. 30, 2017) ("[A] claimant will be 'not disabled' at step four

of the sequential evaluation if he is able to perform his past relevant work as he performed it *or as that job is performed in the national economy*." (citing *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 556-57 (6th Cir. 1995)) (emphasis added)). "It is understood that some individual jobs may require somewhat more or less exertion than the DOT description." SSR 82-61, at *2. Even though Plaintiff's specific past work as a sales attendant involved lifting items weighing up to 100 pounds (Tr. 234), the VE testified, and the ALJ found, sales attendant jobs are typically performed at the light level (Tr. 30, 52). Accordingly, even if the ALJ would have assigned a light work RFC, Plaintiff would still be found capable of performing her past relevant work, particularly considering Plaintiff does not argue, and the ALJ did not find, that Plaintiff has any specific postural limitations.[3]

In sum, the Grid Rules do not apply at step four, and Plaintiff does not get to step five even with a light work RFC. Plaintiff's motion will be **DENIED** in this regard.

### E. The RFC Assessment is Supported by Substantial Evidence.

As mentioned, Plaintiff also argues more generally that the ALJ's assessment of her RFC is not supported by substantial evidence. A claimant's RFC is the most they can do despite their impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining

---

[3] Plaintiff very briefly argues the opinion of William H. Holland, M.D., who performed a physical consultative exam, supports a light work RFC rather than medium [Doc. 13 at Page ID # 478]. As just explained, however, a light work RFC would not get Plaintiff past step four in this case, so the Court does not address this further.

a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). In this case, the ALJ explained that his RFC assessment was "supported by opinions from the consultative examiners, opinions from the state agency medical and psychological consultants, and medical evidence that noted mental improvement with Saphris, and the rather conservative treatment for [Plaintiff's] physical impairment." (Tr. 30).

Plaintiff again argues Dr. Spalding's opinion supports a more restrictive RFC. The Court has already discussed Dr. Spalding's opinion and determined the ALJ gave good reasons for not adopting it or assigning it significant weight. It is unnecessary to repeat that analysis here. Although she has the burden of proof through step four, Plaintiff does not cite any evidence in the record (other than Dr. Spalding's opinion) in support of her argument that the ALJ erred by finding her capable of performing medium work.

As noted above, where there is substantial evidence to support the Commissioner's findings, they should be affirmed. *See Smith*, 99 F.3d at 782 (citations omitted); *Ross*, 440 F.2d at 691 (citation omitted). Here, there is substantial evidence to support the ALJ's conclusion, including the opinions of the state agency non-examining consultants, normal exam findings, and other evidence discussed by the ALJ. Plaintiff simply has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). Plaintiff's motion will be **DENIED** in this regard.

Plaintiff also asserts her "cervical spine degenerative joint disease, confirmed by x-ray, mild bilateral knee medial compartment, confirmed by x-ray, depressive, bipolar, and related disorders and anxiety and obsessive compulsive disorders constitute severe medically

determinable disorders," and that these "severe medically determinable mental and physical disorders prevent [her] from engaging in any job existing in significant numbers in the national economy." [Doc. 13 at Page ID # 478-79 (citations to Tr. omitted)]. The ALJ found Plaintiff's cervical degenerative joint disease was a severe impairment. The ALJ also found Plaintiff had a severe mental impairment of "affective disorder," and Plaintiff fails to address whether any of the conditions listed in her are not within that umbrella. The ALJ also considered the relationship between Plaintiff's physical and mental impairments, noting Plaintiff reported to the psychological consultative examiner that problems were primarily physical (Tr. 28).

To the extent Plaintiff is arguing the ALJ erred by not finding Plaintiff's knee impairment is severe, any such error[4] would be harmless because the ALJ considered Plaintiff's knee during the RFC assessment as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). At step two, the ALJ described Plaintiff's mild knee x-ray findings, and further that "there were no abnormal external findings of the left knee on consultative examination." (Tr. 23). He therefore concluded Plaintiff did not have a severe knee impairment. In assessing Plaintiff's RFC, he again mentioned Plaintiff's disability claim was predicated in part on her knee condition, but he found Plaintiff's complaints were not supported by the record (Tr.

---

[4] The x-ray Plaintiff cites regarding her knee hardly indicates a severe impairment. The record contains a note from a physician's assistant explaining the results (Tr. 343). The PA diagnosed Plaintiff with "mild arthritis." The note states Plaintiff's bones looked "healthy," and that there "was no sign of abnormal fluid in the joint." The PA offered to refer Plaintiff to physical therapy if she was "ready," but the PA also said, "Hopefully, you are better." (Tr. 343).

26).  Specifically regarding her knee, the ALJ discussed how Dr. Holland found she had a "normal gait . . . and was able to sit and then rise from a seated position easily, then get on and off the examination table without assistance." (Tr. 26-27).  The ALJ gave "great weight" to Dr. Holland's opinion that Plaintiff could sit, stand, or walk for six to eight hours per work day, noting the opinion was supported by Plaintiff's full range of motion in her spine and extremities and normal gait during the exam (Tr. 29).  Furthermore, Plaintiff does not allege any additional functional limitations that arise from her knee impairment.

The ALJ acknowledged and discussed Plaintiff's knee impairment during his assessment of her RFC at step four.  He found her knee impairment did not impact Plaintiff's ability to do basic work activities, and that the medium work RFC accommodated Plaintiff's physical limitations.  As discussed above, Plaintiff has not shown any error with the ALJ's medium work RFC.  Accordingly, to the extent Plaintiff is arguing the ALJ erred by not finding her knee impairment to be severe, her argument is not well-taken.

V.      CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1)  Plaintiff's motion for judgment on the administrative record [Doc. 12] is **DENIED**;

2)  The Commissioner's motion for summary judgment [Doc. 16] is **GRANTED**; and

3)  The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE